# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ASSOCIATION FOR LOS ANGELES
DEPUTY SHERIFFS, in Its
Representational Capacity, on
Behalf of Its Members; DARRIN
WILKINSON; LISA BROWN DEBS;
SEAN O'DONOGHUE; DAVID SHERR,
             *Plaintiffs-Appellants,*

             v.

COUNTY OF LOS ANGELES, a
Municipal Corporation (also
erroneously sued as the LOS
ANGELES COUNTY BOARD OF
SUPERVISORS, the LOS ANGELES
COUNTY CIVIL SERVICE COMMISSION
and the LOS ANGELES COUNTY
SHERIFF'S DEPARTMENT); GLORIA
MOLINA, in her capacity as a LOS
Angeles County Supervisor;
YVONNE BRAITHWAITE BURKE, in
her capacity as a Los Angeles
County Supervisor; ZEV
YAROSLAVSKY, in his capacity as a
Los Angeles County Supervisor;
DON KNABE, in his capacity as a
Los Angeles County Supervisor;
MICHAEL D. ANTONOVICH, in his
capacity as a Los Angeles County

No. 08-56283

D.C. No.
2:08-cv-00238-
RGK-FFM

OPINION

Supervisor; LYNN ADKINS, in his capacity as a Civil Service Commissioner; VANGE FELTON, in her capacity as a Civil Service Commissioner; CAROL FOX, in her capacity as a Civil Service Commissioner; Z. GREG KAHWAJIAN, in his capacity as a Civil Service Commissioner; EVELYN MARTINEZ, in her capacity as a Civil Service Commissioner; LEROY BACA, individually and as Sheriff of the County of Los Angeles,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted
October 6, 2010—Pasadena, California

Filed August 12, 2011

Before: Harry Pregerson, Dorothy W. Nelson, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Pregerson;
Partial Concurrence and Partial Dissent by Judge Ikuta

---

**COUNSEL**

Elizabeth J. Gibbons, Green & Shinee, Encino, California, for the plaintiffs-appellants.

Connie C. Almond (argued) and Jeffrey C. Freedman, Liebert Cassidy Whitmore, Los Angeles, California, for the defendants-appellees.

---

**OPINION**

PREGERSON, Circuit Judge:

This appeal concerns the requirements of due process when law enforcement officers charged with felonies are suspended without pay. We affirm in part and reverse in part the decision of the district court.

FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiffs Darrin Wilkinson, David Sherr, Lisa Brown Debs, and Sean O'Donoghue are four current or former Los Angeles County deputy sheriffs, joined by their union, the Association of Los Angeles Deputy Sheriffs (collectively, "Plaintiffs"). Defendants are the County of Los Angeles (the "County"), the Los Angeles County Supervisors (the "Super-

---

[1]The following facts come primarily from Plaintiffs' first amended complaint. Because this is an appeal from a dismissal for failure to state a claim, all facts alleged are accepted as true and interpreted in the light most favorable to Plaintiffs. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

visors"), the Los Angeles County Civil Service Commission-ers (the "Civil Service Commissioners"), and the Los Angeles County Sheriff (the "Sheriff") (collectively, "Defendants").

All four deputy sheriffs were charged with felonies. Plaintiff Wilkinson was charged in June 2002 with nine felony counts of falsifying police reports. Plaintiff Sherr was charged on June 11, 2003, with seven counts of workers' compensation insurance fraud, perjury, and grand theft. Plaintiff Debs was charged on June 27, 2004, with felony drunk driving. Plaintiff O'Donoghue was charged on June 3, 2002, with two counts of falsifying a police report, three counts of accessory after the fact to possession of narcotics for sale, one count of perjury, and one count of false imprisonment.

The four deputies were served by the Los Angeles County Sheriff's Department with letters of intent to suspend them. Plaintiffs responded in writing and denied the allegations against them, but were nonetheless suspended without pay. All four plaintiffs then requested post-suspension hearings before the Los Angeles County Civil Service Commission (the "Commission"). The request was held in abeyance pending completion of the criminal proceedings and disciplinary action by the Sheriff's Department.

Ultimately, the criminal charges against plaintiffs Wilkinson and Debs were dropped, and plaintiffs Sherr and O'Donoghue were acquitted by juries. All four were reinstated from their suspensions and returned to paid status.[2] They continued to demand hearings before the Commission to contest the propriety of their suspensions after the fact.

Many months after their reinstatement from suspension,

_____

[2]Wilkinson was suspended for approximately nine months. Sherr was suspended for approximately ten and a half months. Debs was suspended for approximately three weeks. O'Donoghue was suspended for approximately nine months.

and before any post-suspension hearings were held, all four deputies were discharged from the Sheriff's Department, at least in part based on the allegations underlying the criminal charges.[3] They all requested hearings on their discharges. These hearings were consolidated with the still-pending post-suspension hearings.

While waiting for their hearings on their suspensions and discharges, Wilkinson and Sherr were both granted disability retirement by the Los Angeles County Employee Retirement System. The date of retirement was set retroactively to the day after their discharge. This effectively converted Wilkinson and Sherr from discharged employees to retired employees. The Commission subsequently issued final decisions stating that it did not have jurisdiction over the appeals of retired deputies, including Wilkinson and Sherr. Neither Wilkinson nor Sherr ever received a post-suspension hearing.

Debs and O'Donoghue received post-suspension hearings. The Commission's hearing officer found that Debs's suspension and discharge were both improper because the allegations underlying the felony charge against her were untrue. The hearing officer recommended that the Commission reinstate Debs from her discharge and also restore the pay lost during her suspension. After hearing this recommendation, the Commission ordered Debs reinstated from her discharge, but denied Debs any back pay for the time she was suspended. The Commission held that Debs's suspension was proper because a felony charge, whether supported by valid allegations or not, was pending against her at the time the Sheriff's Department imposed her suspension.

---

[3]Wilkinson was reinstated from suspension on March 28, 2003; he was discharged in September 2004. Sherr was reinstated from suspension on May 18, 2004; he was discharged on January 21, 2005. Debs was reinstated from suspension on August 17, 2004; she was discharged on March 10, 2005. O'Donoghue was reinstated from suspension on February 28, 2003; he was discharged on June 9, 2005.

As for O'Donoghue, the hearing officer issued a report recommending O'Donoghue's full reinstatement with back pay to the date of his discharge. The hearing officer also recommended that O'Donoghue receive back pay and benefits for the time he was suspended. After hearing the recommendation, the Commission ordered O'Donoghue reinstated from his discharge. Rather than reversing the suspension, however, the Commission directed the Sheriff, the Sheriff's Department, and the County to reconsider the decision to suspend O'Donoghue. They did not do so. O'Donoghue was not reimbursed for his lost pay and benefits for the time he was suspended.

Plaintiffs brought claims under 42 U.S.C. § 1983 in federal district court, alleging violations of their Fourteenth Amendment due process rights.[4] Defendants filed a motion to dismiss. The district court granted the motion, holding that Plaintiffs had failed to state a claim against the County of Los Angeles, and that the individual defendants were entitled to qualified immunity. Plaintiffs appeal from that decision.

## STANDARD OF REVIEW

A dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is reviewed de novo. *Synagogue v. United States*, 482 F.3d 1058, 1060 (9th Cir. 2007). "When ruling on a motion to dismiss, we accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). The court draws all reasonable inferences in favor of the plaintiff. *Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). "Dismissal is proper under Rule 12(b)(6) if it appears

---

[4]Plaintiffs Wilkinson, Debs, and O'Donoghue also appealed the Commission's decisions by filing petitions for writ of mandate in Los Angeles Superior Court. The state court petitions were dismissed without prejudice after Plaintiffs filed their complaint in federal court.

beyond doubt that the non-movant can prove no set of facts to support its claims." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). This court also reviews de novo the district court's determination regarding qualified immunity. *Robinson v. Prunty*, 249 F.3d 862, 865-66 (9th Cir. 2001).

## DISCUSSION

### I.  Procedural Due Process

**[1]**  It is not disputed by Defendants that Plaintiffs have a constitutionally protected property interest in continued employment. Plaintiffs may not be deprived of that employment without due process of law. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). Temporary suspensions, like terminations, are deprivations of employment that can implicate the protections of due process. *See FDIC v. Mallen*, 486 U.S. 230, 240 (1988); *Finkelstein v. Bergna*, 924 F.2d 1449, 1451 (9th Cir. 1991). " 'Once it is determined that due process applies, the question remains what process is due.' " *Mallen*, 486 U.S. at 240 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

**[2]**  "[E]mployees who occupy positions of great public trust and high public visibility, such as police officers," can be temporarily suspended without any pre-suspension due process if felony charges are filed against them. *Gilbert v. Homar*, 520 U.S. 924, 932-34 (1997); *see also Mallen*, 486 U.S. at 230 (upholding suspension of indicted bank official without pre-suspension hearing). The felony charge "serve[s] to assure that the state employer's decision to suspend the employee is not 'baseless or unwarranted,' in that an independent third party has determined that there is probable cause to believe the employee committed a serious crime." *Gilbert*, 520 U.S. at 934 (quoting *Mallen*, 486 U.S. at 240) (internal citation omitted).

**[3]**  However, the constitutionality of a suspension without any *pre*-suspension procedural due process depends on the

availability of a *post*-suspension hearing. *See Gilbert*, 520 U.S. at 930 ("[W]here a State must act quickly, or where it would be impractical to provide predeprivation process, post-deprivation process satisfies the requirements of the Due Process Clause."); *Mallen*, 486 U.S. at 240 (holding that "in limited cases demanding prompt action," the government may be justified in "postponing the opportunity to be heard until after the initial deprivation."); *see also Loudermill*, 470 U.S. at 547 n.12 ("[T]he existence of post-termination procedures is relevant to the necessary scope of pretermination procedures.").

**[4]** Even though the plaintiffs in *Gilbert* and *Mallen* received no pre-suspension process at all, unlike the plaintiffs in this case, who received notice of the impending suspension and the opportunity to submit a written statement in response, this distinction is immaterial. Plaintiffs allege—and at this stage of the proceedings we must assume the allegation is true —that the pre-suspension process provided by Defendants consisted of nothing more than a determination that felony charges had been filed, without any inquiry into the veracity of the allegations underlying those charges. In other words, once Defendants confirmed that Plaintiffs had been charged with felonies, the pre-suspension inquiry was at an end, and Plaintiffs were suspended. This level of due process is no more substantial than what was accorded the plaintiffs in *Gilbert* and *Mallen*, in which the plaintiffs were summarily suspended as soon as it was determined that they had been charged with felonies. The fact that Plaintiffs in the instant case were given an opportunity to respond makes little difference when their response could have had no effect on their suspension. Therefore, as indicated in *Gilbert* and *Mallen*, due process requires that Plaintiffs receive post-suspension hearings in addition to the limited procedures they received before their suspensions.[5]

---

[5]Defendants argue that Plaintiffs' claims are precluded under the doctrine of res judicata because Plaintiffs failed to seek judicial review of the

## II. *Monell* claims

**[5]** To bring a § 1983 claim against a local government entity, a plaintiff must plead that a municipality's policy or custom caused a violation of the plaintiff's constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The district court held that none of Plaintiffs' allegations sufficiently pleaded a *Monell* claim. We disagree.

### A.

**[6]** Plaintiffs allege that Defendants have adopted a policy of denying post-suspension hearings to employees who resigned after the suspension was imposed but before the hearing was completed. As discussed above, due process requires that an employee suspended solely on the basis that felony charges were filed against him must be granted a post-suspension hearing. Because plaintiffs Wilkinson and Sherr were denied any post-suspension hearing at all, pursuant to Defendants' policy, they have sufficiently stated a *Monell* claim.

**[7]** The district court relied on *Zuniga v. Los Angeles County Civil Service Commission*, 40 Cal. Rptr. 3d 863 (Ct. App. 2006), a California case, to dismiss Wilkinson and Sherr's *Monell* claim. *Zuniga* held that the Commission lacks jurisdiction to hear appeals from retired employees. *Id.* at 866. The district court stated, "Because the Commission lacks jurisdiction, it cannot be simultaneously denying the individuals their constitutional right to due process."

Commission's decisions. This argument is without merit. The case Defendants cite, *Miller v. County of Santa Cruz*, 39 F.3d 1030, 1038 (9th Cir. 1994), is inapposite for two reasons: first, it involved a challenge to a civil service commission's unreviewed factual findings, *id.* at 1038, not a constitutional challenge to the commission's procedures; second, *Miller*'s holding of preclusion relied on a finding that the commission had adequate procedural safeguards in place, *id.* at 1032-33, whereas in this case Plaintiffs allege there were insufficient safeguards.

**[8]** But the fact that the Commission is precluded from hearing Wilkinson's and Sherr's appeals does not remove the County's[6] constitutional obligation to provide some form of post-suspension hearings. Summary suspensions with minimal or no pre-suspension due process are constitutional only if followed by adequate post-suspension procedures. Take away those post-suspension procedures, and the suspensions are no longer constitutional under the Due Process Clause.[7] The issue is not whether the Commission had jurisdiction, but whether Wilkinson and Sherr received sufficient post-suspension process to satisfy constitutional requirements. They did not receive such process, based on Defendants' policy to deny hearings to retired employees, and thus Wilkinson and Sherr have successfully stated a *Monell* claim.[8]

### B.

**[9]** Plaintiffs Debs and O'Donoghue did receive post-suspension hearings, unlike Wilkinson and Sherr. But Debs and O'Donoghue allege that the outcomes of those hearings

---

[6]Plaintiffs allege the challenged policy was also adopted by Los Angeles County and the Board of Supervisors. They also allege that the Sheriff ratified the conduct of the other defendants.

[7]Nor can state law supersede the federal requirements of due process. *See Loudermill*, 470 U.S. at 541.

[8]Plaintiffs also allege in their complaint that Defendants' policies unnecessarily delayed their hearings. The district court discussed the issue of delay at some length. In Plaintiffs' briefs on appeal, however, Plaintiffs have waived delay as a separate constitutional claim. *See* Appellants' Br. at 25. Plaintiffs instead assert that the delay led to an unconstitutional result when combined with Defendants' policy to deny hearings to retired employees: Wilkinson's and Sherr's hearings were delayed so long that the deputies retired before the hearings were held, which denied them their right to receive full post-suspension due process. Because we conclude that Plaintiffs have sufficiently pleaded that Wilkinson's and Sherr's suspensions were unconstitutional based simply on the fact that they were denied post-suspension hearings, we do not address separately the issue of delay. As to Debs and O'Donoghue, Plaintiffs appear to have waived entirely any arguments regarding delay.

were predetermined. They allege that Defendants had a policy of sustaining suspensions, even after post-suspension review, so long as there was evidence that a felony charge was filed against the employee, regardless of the validity of the allegations stated in the charge. Thus, although Debs and O'Donoghue were granted post-suspension hearings, the Commission inquired no further than to confirm the pre-suspension determinations that felony charges had been filed against the two deputies. In effect, Plaintiffs allege that the post-suspension hearings merely repeated the minimal pre-suspension procedures afforded Debs and O'Donoghue.

The district court concluded that Defendants' policy, if it existed, was never applied to Debs and O'Donoghue, because the hearing officers in each of their cases recommended that Debs and O'Donoghue "receive back pay for the period of their suspensions." The district court overlooked the crucial point that the hearing officers were only making *recommendations*, and were not the final decisionmakers. Plaintiffs allege that the Commission, following the County's policy to sustain suspensions based on the filing of felony charges, rejected the recommendation to reverse Debs's suspension. And although the Commission recommended reconsideration of O'Donoghue's suspension, the County and the Sheriff declined to do so. The district court erred in focusing on the actions of the hearing officers, and not on the actions of the final decisionmakers—in Debs's case, the Commission, and in O'Donoghue's case, the County and the Sheriff.

Because Plaintiffs allege that Defendants applied the challenged policy to them, we must decide whether Plaintiffs have thereby alleged a constitutional violation. We determine what procedures satisfy due process by applying the balancing test from *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Brewster v. Bd. of Educ. of Lynwood Unified School Dist.*, 149 F.3d 971, 983 (9th Cir. 1998). *Mathews* requires courts to consider the following three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [third], the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

**[10]** Making every inference in favor of Plaintiffs, as we must at the pleading stage, we conclude that Plaintiffs could conceivably prove facts to support their allegation that Defendants' policy caused a violation of Plaintiffs' right to due process. For example, Plaintiffs could show that the limited post-suspension inquiry created too great a risk of erroneous deprivation of their protected interest in employment, or that Defendants' interest in maintaining such limited procedures does not outweigh Plaintiffs' interest in a more thorough investigation. Because Plaintiffs can potentially prove a "set of facts to support [their] claims," *Adams*, 355 F.3d at 1183, we hold that Debs and O'Donoghue have adequately stated a *Monell* claim.

**[11]** We need not and do not decide whether, in all cases, a post-suspension hearing that looks no deeper than whether felony charges were filed against an employee would or would not pass constitutional muster. Indeed, full *Mathews* analysis cannot properly be conducted at the pleading stage with an undeveloped record. *See Brewster*, 149 F.3d at 983 ("Precisely what procedures the Due Process Clause requires in any given case is a function of context."). It is possible that Defendants' post-suspension hearings are more robust than Plaintiffs allege, or that Defendants' have a strong justification for their challenged policy. We leave it to the district court to make these determinations in the first instance, with

*Mathews* as its guide, and therefore remand for further fact-finding and analysis.[9]

The dissent argues that Debs and O'Donoghue are not challenging Defendants' hearing procedures, but only the substantive standard applied during those procedures, namely, Defendants' policy of upholding suspensions solely on the basis of felony charges. Dis. op. at 10768. Thus, the dissent claims, Debs and O'Donoghue are not raising a procedural due process issue at all. Dis. op. at 10769. We disagree. Debs and O'Donoghue allege that Defendants apply their policy both pre-suspension and post-suspension. By doing so, Defendants render the post-suspension hearings redundant and meaningless, because the post-suspension inquiry goes no deeper than the pre-suspension inquiry. A meaningless hearing is no hearing at all, and does not satisfy the requirements of procedural due process. *See Barry v. Barchi*, 443 U.S. 55, 66 (1979) ("[T]he opportunity to be heard must be 'at a meaningful time and in a meaningful manner.' " (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965))). Thus, Defendants' policy of upholding suspensions on the sole basis

---

[9]The Second Circuit recently followed a similar approach in *Nnebe v. Daus*, ___ F.3d ___, No. 09-4305, 2011 WL 2149924, at *12 (2d Cir. May 31, 2011). *Nnebe* concerned New York City's policy of summarily suspending taxi drivers' licenses if the drivers were arrested on certain criminal charges. *Id.* at *1. Although the drivers were granted post-suspension hearings, the record at summary judgment suggested that the administrative law judges were "strictly prevented from considering anything other than the identity of the driver and the offense for which he was charged upon arrest." *Id.* at *12. The court declined to decide whether such a proceeding satisfied due process; more information was required as to the substance of the post-suspension hearings. *Id.* The court thus remanded the case, instructing the district court to conduct additional fact-finding. *Id.* at *13. The court further instructed the district court to evaluate the post-suspension procedure under the *Mathews* test. *Id.*

If such an approach is appropriate at the summary judgment stage in *Nnebe*, it is even more compelling in this case. At summary judgment the record is at least partially developed, whereas in this case the record has not been developed at all, given that it was dismissed at the pleading stage.

of felony charges, even on post-suspension review, directly impacts the procedural due process question. Accordingly, Debs and O'Donoghue have properly and plausibly stated a procedural due process claim.

The dissent further argues that Debs and O'Donoghue cannot state a plausible due process claim because their "terms of employment allowed them to be suspended without pay on the basis of a felony charge alone." Dis. op. at 10770. In other words, the dissent claims that the felony charges were sufficient cause to justify the suspensions of Debs and O'Donoghue. The dissent supports this assertion by citing to the Supreme Court's decision in *Gilbert* and Los Angeles County Civil Service Rule 18.031. *See* Dis. op. at 10770-71. We disagree that either authority resolves this case at this stage of the proceedings.

Contrary to the dissent's assertion, *Gilbert* does not hold that felony charges alone can justify the suspension of a law enforcement officer. *Gilbert* merely holds that felony charges can justify suspension *without pre-suspension due process*. *See* 520 U.S. at 932-34. *Gilbert* says nothing about whether felony charges will continue to justify a suspension under post-suspension review. *Gilbert* is a case about the timing of suspensions, not their justification.

The dissent argues that *Gilbert* stands for the proposition that "a suspension without pay while a felony charge is pending does not deprive a law enforcement employee of any constitutionally protected property interest." Dis. op. at 10770-71. But the *Gilbert* Court's analysis belies this claim. If the plaintiff in *Gilbert* had no protected property interest in his employment, the Court would have ended the inquiry there and concluded he was not entitled to a hearing at all, either pre- or post-suspension. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 578 (1972) (holding that absent a protected property interest in employment, an employee is not constitutionally entitled to a hearing before his employer

declines to renew his employment contract). Instead, the *Gilbert* Court applied the *Mathews* test "to determine what process is constitutionally due," *Gilbert*, 520 U.S. at 931-32, which indicates that the Court considered the plaintiff's employment to be a protected property interest. *See Roth*, 408 U.S. at 569 ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). Therefore, *Gilbert* does not affect Plaintiffs' protected property interest.[10]

The dissent also reads Rule 18.031 to conclusively allow for summary suspensions when a law enforcement officer is charged with a felony.[11] Dis. op. at 10770-71. Even assuming

---

[10]Nor does *Gilbert* resolve the issue of backpay as simply as the dissent suggests. *See* Dis. op. at 10770-71. Although *Gilbert* holds that a law enforcement officer charged with a felony can be suspended without pay prior to receiving a hearing, *see* 520 U.S. at 932-33, it says nothing about backpay. In fact, the issue of whether the plaintiff was entitled to backpay was not before the Court in *Gilbert* because the plaintiff had *already* received backpay. *Id.* at 927.

Moreover, the Court in *Gilbert* minimized the plaintiff's interest in "the uninterrupted receipt of his paycheck" because "so long as the suspended employee receives a sufficiently prompt post-suspension hearing, the lost income is relatively insubstantial (compared with termination)." *Id.* at 932. Indeed, the plaintiff in *Gilbert* was suspended for only 24 days before receiving a hearing. *See id.* at 927. Plaintiff O'Donoghue, in contrast, was suspended without pay for nine months, and received his hearing almost three years after his initial suspension. It is difficult to assert that the loss of nine months' income is "relatively insubstantial," or that a hearing three years after the fact is "sufficiently prompt"—the *Gilbert* Court's *Mathews* balancing might have come out quite differently given these facts.

At this stage of the proceedings, we decline to decide whether Plaintiffs are entitled to backpay. We merely note that *Gilbert* does not resolve the question. Should the issue of backpay arise, we leave its resolution in the first instance to the district court.

[11]Rule 18.031 states, in relevant part:

Failure of an employee to perform his or her assigned duties so as to meet fully explicitly stated or implied standards of perfor-

Rule 18.031 defines Plaintiffs' protected property interest, we disagree with the dissent's interpretation of the rule. We do not dispute that Rule 18.031 allows suspension of an employee based on a "condition which impairs an employee's qualifications for his or her position." But nowhere does the rule state that a felony charge is necessarily such a "condition"—indeed, the rule does not mention felonies or felony charges at all. The dissent makes an inferential leap to conclude that felony charges would "unquestionably" fall under 18.031, citing *Gilbert* for support. Dis. op. at 10770-71. But, as discussed earlier, *Gilbert* does not hold that felony charges justify suspension, only that felony charges justify suspension without a pre-suspension hearing. 520 U.S. at 932-34. Under *Gilbert*, a suspended deputy charged with a felony is still entitled to a post-suspension hearing, *see id.* at 530, which means his protected property interest does not end with the felony charge. Conceivably, one purpose of that post-suspension hearing would be to determine if the particular felony allegations against a suspended deputy would justify suspension under Rule 18.031. In any event, Rule 18.031 does not clearly terminate a deputy's protected property interest as soon as she is charged with a felony, and thus the rule is not determinative at this stage of the proceedings.

In sum, we hold that Debs and O'Donoghue have plausibly stated a *Monell* claim, and remand to the district court for further proceedings.

## III.   Qualified Immunity

**[12]** In deciding whether to grant qualified immunity, a court must determine (a) whether the alleged facts make out

mance may constitute adequate grounds for discharge, reduction or suspension. . . . Grounds for discharge, reduction or suspension may also include . . . any behavior or condition which impairs an employee's qualifications for his or her position or for continued county employment.

Civil Service Rule 18.031.

a constitutional violation, and (b) whether the constitutional right at issue was clearly established at the time of the violation. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). A right is clearly established if it would be clear to a reasonable official that his conduct was unlawful. *Id.* at 202. A court may exercise its discretion as to the order in which it addresses each prong. *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009).

## A.

Under the facts alleged, plaintiffs Wilkinson and Sherr have made out a constitutional violation. They had a right to a post-suspension hearing which Defendants denied them.

The district court held that this right was not clearly established, however. The court stated that after the California Court of Appeal's decision in *Zuniga*, a reasonable official would have believed that denying jurisdiction over the appeals of retired deputies was lawful.

[13] We agree with the district court as to the individually named Civil Service Commissioners, who after *Zuniga* had no authority to hear Wilkinson's and Sherr's appeals. 40 Cal. Rptr. 3d at 866. But *Zuniga* does not protect the County Supervisors and the Sheriff. *Zuniga* interpreted the County Charter and Civil Service Rules as denying the Commission jurisdiction. *See id.* Given the holdings of *Loudermill*, *Mallen*, and *Gilbert*, a reasonable official in the position of the Sheriff and the Supervisors should have concluded that, because the Commission was stripped by the state appellate court of its ability to adjudicate the suspensions of retired employees, those suspensions would be constitutionally suspect. The onus would be on County officials to address this constitutional defect, for example by providing an alternative hearing for the retired employees. *Zuniga* merely points out a jurisdictional flaw in the County's civil service procedures; *Zuniga* does not excuse the unconstitutionality of that flaw.

**[14]** Thus, as to the claims brought by Wilkinson and Sherr, we hold that the district court erred in granting qualified immunity to the Sheriff and the Board of Supervisors, but did not err in granting qualified immunity to the Civil Service Commissioners.[12]

B.

**[15]** Under the facts alleged, the hearings Defendants provided for Debs and O'Donoghue may have been unconstitutional. We hold, however, that to the extent Debs and O'Donoghue were entitled to a more substantial hearing, this right was not clearly established at the time of the violation. As the Second Circuit recently noted, it is an unresolved question whether due process is satisfied by a post-suspension hearing that sustains a suspension based solely on the fact of a pending criminal proceeding. *See Nnebe v. Daus*, ___ F.3d ___, No. 09-4305, 2011 WL 2149924, at *12 (2d Cir. May 31, 2011). Although *Gilbert* and *Mallen* make clear that post-suspension procedures are constitutionally required when employees are suspended after being charged with felonies, those cases do not specifically define what must be included in those procedures. A reasonable official would not necessarily infer from existing case law that a post-suspension hearing limited to the question of whether a felony charge has been filed is unconstitutional. Thus, all individual defendants are entitled to qualified immunity from Debs's and O'Donoghue's claims.

CONCLUSION

Plaintiffs have adequately alleged that Defendants' policies caused violations of their constitutional rights, and therefore

---

[12]In its qualified immunity analysis, the district court discussed Plaintiffs' claim that their hearings were delayed for too long. We need not address this issue because Plaintiffs have waived that claim as a separate argument. *See* Appellants' Br. at 25.

Plaintiffs have stated *Monell* claims against the County. All individual defendants, however, are entitled to qualified immunity from the claims of Debs and O'Donoghue, whose right to a more substantial post-suspension hearing was not clearly established at the time of the violations. The individually named Civil Service Commissioners are also entitled to qualified immunity from Wilkinson's and Sherr's claims because the Commission was stripped of jurisdiction by the California Court of Appeal in *Zuniga*. But those claims may go forward against the Sheriff and the County Supervisors, who were constitutionally required to provide post-suspension procedures for suspended deputy sheriffs who later retired. We remand for further proceedings consistent with this opinion.[13]

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART.** The parties shall bear their own costs on appeal.

---

IKUTA, Circuit Judge, concurring in part and dissenting in part:

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Here, Wilkinson and Sherr alleged a plausible violation of their due process rights, namely, that they never received a hearing after being suspended without pay. Because a government employee has a constitutional right to such a post-suspension hearing, *see Gilbert v. Homar*, 520 U.S. 924, 930 (1997), I concur in sections II.A and III.A of the majority opinion.

---

[13]Because we hold that Plaintiffs have adequately stated their claims, we do not address their argument that the district court erred in not granting leave to amend the complaint.

Debs and O'Donoghue, on the other hand, did not allege a plausible violation of their due process rights. Both received all the process that was due: they had full hearings before hearing officers after they were suspended, and the Commission ordered both to be reinstated, although it denied backpay on the ground that the suspensions were justified. Debs and O'Donoghue do not challenge the Commission's procedures, but rather the substantive standard the Commission applied to them, that is, they object to the Commission's determination that they could be validly suspended simply because felony charges had been filed against them. According to Debs and O'Donoghue, their hearings were not "meaningful" because, in effect, it was too easy for the Sheriff's Department to win.

This reasoning misses the point. The scope of a public employee's constitutionally protected property interest in his or her job depends on the terms of his or her employment. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577-78 (1972) ("Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . . Just as welfare recipients' 'property' interest in welfare payments was created and defined by statutory terms, so the respondent's 'property' interest in employment at Wisconsin State University-Oshkosh was created and defined by the terms of his appointment."). In other words, what constitutes adequate "cause" for suspension or termination of a particular employee will vary according to the federal, state, or local law that governs his or her employment. *See, e.g.*, *FDIC v. Mallen*, 486 U.S. 230, 237 (1988) (holding that "cause" for suspending the indicted director or officer of a federally insured bank is defined by 12 U.S.C. § 1818(g)(1), which stated that an officer can be suspended if his continued service "[might] pose a threat to the interests of the bank's depositors or [might] threaten to impair public confidence in the bank" (alterations in original)). If (for example) state law allowed a prison guard to be terminated for drinking on the job, a guard

who drank on the job could be fired so long as he received an adequate hearing; such a hearing would not be made less "meaningful" just because the state needed to prove only that the guard downed a six-pack while patrolling the yard. Thus, if Debs and O'Donoghue's terms of employment allowed them to be suspended without pay on the basis of a felony charge alone, then they cannot claim they were deprived of adequate process simply because in the end, the Commission upheld their suspension without pay on that basis.

And that is exactly the situation here. Under Rule 18.031 of the Los Angeles County Civil Service Rules,[1] the Sheriff's Department may suspend deputy sheriffs based on "any behavior or condition which impairs an employee's qualifications for his or her position or for continued county employment." In other words, deputy sheriffs may be suspended even if they have not engaged in affirmative misconduct. Debs and O'Donoghue concede that under this standard, a deputy sheriff may be suspended without pay while a felony charge is pending, because the pendency of a felony charge unquestionably "impairs" a deputy sheriff's "qualifications" for employment as a law enforcement officer. *See Gilbert*, 520 U.S. at 932 (noting that a state has a "significant interest in immediately suspending, when felony charges are filed against them, employees who occupy positions of great public trust and high public visibility, such as police officers"). Moreover, the Supreme Court has confirmed that a suspension without pay while a felony charge is pending does not deprive a law

---

[1]The rule provides that:

> Failure of an employee to perform his or her assigned duties so as to meet fully explicitly stated or implied standards of performance may constitute adequate grounds for discharge, reduction or suspension. . . . Grounds for discharge, reduction or suspension may also include . . . any behavior or condition which impairs an employee's qualifications for his or her position or for continued county employment.

Civil Service Rule 18.031.

enforcement employee of any constitutionally protected property interest. *See id.* The government is not obliged to "give an employee charged with a felony a paid leave at taxpayer expense." *Id.* In other words, if a law enforcement employee's "services to the government are no longer useful once the felony charge has been filed, the Constitution does not require the government to bear the added expense of hiring a replacement while still paying him." *Id.*[2]

In short, a Los Angeles County deputy sheriff's property interest in continued employment does not extend to being paid while a felony charge is pending against him or her, regardless of whether the employee committed the misconduct that formed the basis of the felony charge.[3] Because the hearing afforded by the Commission was consistent with the Civil Service Rules and the Constitution, Debs and O'Donoghue were not deprived of anything to which they

_____

[2]The majority asserts that *Gilbert* is inapposite because its holding was about the necessity of pre-suspension process, *see* Maj. op. at 10762-63, not about backpay, *see* Maj. op. at 10764 n.10. But the Court's reasoning in *Gilbert* is directly on point. As noted above, *Gilbert* stated that the government need not "bear the added expense of hiring a replacement while still paying" a suspended law enforcement officer, if that officer's "services to the government are no longer useful once the felony charge has been filed." *Gilbert*, 520 U.S. at 932. In short, it is constitutionally permissible not to pay a law enforcement employee who has been suspended with felony charges pending. The majority apparently interprets this statement to mean that while the government need not pay the employee during the suspension, it would have to provide backpay for the suspension period later. This interpretation makes no sense, however, because the government would then still be in the position of paying for both the suspended employee and the employee's replacement during the suspension period, the very expense *Gilbert* said the government need not bear.

[3]While Civil Service Rule 18.04 authorizes the Civil Service Commission to award backpay to an employee for the period of an unpaid suspension if the Commission determines that the suspension was not "justif[ied]," the Sheriff's Department was fully justified in suspending Debs and O'Donoghue under Rule 18.031.

were entitled, and thus they cannot raise a plausible due process claim.[4]

The majority insists that because Debs and O'Donoghue have a property interest in continued employment, they must have alleged a plausible violation of their due process rights. *See* Maj. op. at 10755-56, 10763-64. This conflates the question whether Debs and O'Donoghue were entitled to post-suspension hearings at all (they were) with what substantive standard they were entitled to at the hearings they received. Debs and O'Donoghue's sole complaint is that the Commission denied them backpay on the ground that felony charges were (in fact) pending against them while they were suspended. In order for this to state a due process violation, Debs and O'Donoghue must show that they have a constitutionally protected property interest specifically in *being paid while felony charges are pending against them.* Rule 18.031 and *Gilbert* establish that they do not have such an interest.

Nor can the majority's reasoning be saved by analogy to the Second Circuit's decision in *Nnebe v. Daus*, ___ F.3d ___, 2011 WL 2149924 (2d Cir. May 31, 2011). *See* Maj. op. at 10762 n.9. The plaintiffs in *Nnebe* stated a plausible due pro-

---

[4]The County asserts that the district court's decision as to Debs and O'Donoghue can also be affirmed on the alternate ground of issue preclusion. The County is correct. In *Miller v. County of Santa Cruz*, 39 F.3d 1030 (9th Cir. 1994), this court held that where a plaintiff's § 1983 claim involves the same "primary right" that was at stake in a prior administrative proceeding, a federal court must give the same "full faith and credit" to the factual and legal determinations of the administrative proceeding as it would give to a state court judgment. *See id.* at 1032-34.

Debs and O'Donoghue both had administrative hearings before the Civil Service Commission, and the Commission denied them backpay. Although the plaintiffs have attempted to restate their claims in procedural terms, *see* Maj. op. at 10757-58 n.5, what they are seeking to vindicate in this § 1983 action is exactly the same "primary right" that was at stake in their administrative hearings, namely, their right to backpay. Therefore, under *Miller*, the Commission's finding that Debs and O'Donoghue's suspensions were justified should be conclusive in this case.

cess violation because they alleged that the Taxi and Limousine Commission applied a standard to them that was inconsistent with state law. *See* 2011 WL 2149924, at *1, *4. In this case, by contrast, Debs and O'Donoghue have not alleged that the Civil Service Commission applied a standard inconsistent with the Civil Service Rules. Moreover, in concluding that "a hearing that does nothing more than confirm the driver's identity and the existence of a pending criminal proceeding" might not be adequate process, the Second Circuit expressly relied on three "crucial" facts that indicated that the balancing test of *Mathews v. Eldridge*, 424 U.S. 319 (1976), might tip in favor of the plaintiffs: taxi drivers are not government employees; "the misconduct that results in summary suspension" did not need to be "related to the cab driver's work"; and the "summary suspension policy is triggered even by a warrantless arrest." *Id.* at *12. None of those facts pertains here: deputy sheriffs are government employees; felony charges, by their very nature, affect the work of deputy sheriffs; and the suspension policy in this case is triggered only by the filing of criminal charges. Thus, the reasoning of *Nnebe* is inapposite.

In sum, because Debs and O'Donoghue could not allege that they had a constitutionally protected interest in being paid while felony charges were pending against them, they did not "state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570) (internal quotation marks omitted). I therefore dissent from Section II.B of the majority opinion, and would not reach the issue of qualified immunity discussed in Section III.B.