Douglas **MILLER**, Plaintiff–Appellant,

v.

**COUNTY OF SANTA CRUZ, et al., Defendants–Appellees.**

No. 92–16694.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 14, 1994.

Decided Nov. 8, 1994.

As Amended Dec. 27, 1994.

---

Richard K. Abdalah, Jackson, Abdalah & Rodriguez, Cupertino, CA, for plaintiff-appellant.

Mark G. Bonino and Megan A. Smith, Ropers, Majeski, Kohn, Bently, Wagner & Kane, Redwood City, CA, for the defendants-appellees.

Before: D.W. NELSON and BEEZER, Circuit Judges and LETTS,* District Judge.

BEEZER, Circuit Judge:

Douglas Miller appeals the district court's grant of summary judgment to the County of Santa Cruz and the individually named defendants. The district court concluded that

---

* The Honorable J. Spencer Letts, United States District Judge for the Central District of California, sitting by designation.

the doctrines of res judicata and collateral estoppel barred Miller's federal suit under 42 U.S.C. § 1983 because he failed to seek review of the adverse decision of the Santa Cruz County Civil Service Commission. 796 F.Supp. 1316. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I

Miller was employed by the Santa Cruz County Sheriff's Department from December 1980 until February 1988. He was terminated after four disciplinary actions, the last of which related to an alleged failure to report an overpayment of wages. Miller contested his dismissal before the Santa Cruz County Civil Service Commission. The Commission held a public evidentiary hearing at which Miller was represented by counsel and was permitted to present oral and documentary evidence and to call witnesses. The Commission sustained his dismissal, issuing written findings and conclusions.

Miller was notified of his right to seek judicial review in the Superior Court of California. Cal.Code Civ.P. §§ 1094.5 and 1094.6. He elected not to do so. Instead he filed this suit under 42 U.S.C. § 1983 in the United States District Court. Magistrate Judge Infante, sitting by consent of the parties, granted the County's motion for summary judgment on res judicata and collateral estoppel grounds.[1]

## II

■ The question presented is whether unreviewed findings of a state administrative tribunal are entitled to preclusive effect in a subsequent § 1983 action in federal court. We review de novo a grant of summary

judgment. *Maffei v. Northern Ins. Co.*, 12 F.3d 892, 895 (9th Cir.1993). We review de novo the district court's determination that res judicata and collateral estoppel are available. *Guild Wineries and Distilleries v. Whitehall Co.*, 853 F.2d 755, 758 (9th Cir. 1988); *Plaine v. McCabe*, 797 F.2d 713, 718 (9th Cir.1986). If we determine that collateral estoppel is available, we review for abuse of discretion the district court's decision to accord preclusion to the agency's decision. *Plaine*, 797 F.2d at 718.

## A

Title 28 U.S.C. § 1738 requires that we give the same preclusive effect to state court judgments as they would be given in the state in which they were rendered. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 1331–32, 84 L.Ed.2d 274 (1985).

■ Section 1738 does not govern cases involving unreviewed decisions of a state administrative hearing board or commission. *University of Tennessee v. Elliot*, 478 U.S. 788, 794, 106 S.Ct. 3220, 3223–24, 92 L.Ed.2d 635 (1986). Nonetheless, as a matter of federal common law, federal courts give preclusive effect to the findings of state administrative tribunals in subsequent actions under § 1983. *Id.* at 797–99, 106 S.Ct. at 3225–27.

■ *Elliot* requires us to give preclusive effect, at a minimum, to the factfinding of state administrative tribunals. We have gone further, however, and held that "the federal common law rules of preclusion described in *Elliot* extend to state administrative adjudications of legal as well as factual issues, even if unreviewed, so long as the state proceeding satisfies the requirements

---

1. We reject Miller's contention that summary judgment was improper because the magistrate judge implicitly modified the pretrial order by allowing defendants to file the motion. A magistrate before whom the parties have consented to appear has the same power to issue or modify pretrial orders as a district court judge, and that determination can be set aside only if clearly erroneous and contrary to law. 28 U.S.C. § 636(b)(1)(A). The magistrate judge's decision was neither clearly erroneous nor contrary to law. Moreover, Miller did not object to the magistrate judge's decision to allow defendants to file the motion, nor did he object in his opposition to summary judgment. He suffered no prejudice.

of fairness outlined in [*United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966)].'' *Guild Wineries*, 853 F.2d at 758. The fairness requirements of *Utah Construction* are: (1) that the administrative agency act in a judicial capacity, (2) that the agency resolve disputed issues of fact properly before it, and (3) that the parties have an adequate opportunity to litigate. 384 U.S. at 422, 86 S.Ct. at 1560.

Our reasons for according preclusive effect to unreviewed agency determinations are outlined in detail in *Plaine*, 797 F.2d at 718–721. *Plaine* involved a decision by the California Corporations Commissioner that a merger price was fair. The plaintiff could have, but did not, seek review of the decision in state court. Rather, she brought an action in federal court asserting that defendants violated section 14(e) of the Securities and Exchange Act of 1934. We concluded that the commissioner's unreviewed fairness determination was entitled to preclusive effect. *Id.* at 721. We explained that:

> The Supreme Court has held that administrative proceedings may be given preclusive effect accorded to a court ''[w]hen an administrative agency is acting *in a judicial capacity* and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate.''

*Id.* (emphasis in original) (quoting *Utah Construction*, 384 U.S. at 422, 86 S.Ct. at 1560). We reasoned, therefore, that when an administrative proceeding meets the *Utah Construction* requirements, ''it may rise to the level of a 'judicial proceeding' entitled to preclusive effect by section 1738.'' *Id.* at 719.

The threshold inquiry, we held, is whether a state administrative proceeding was conducted with sufficient safeguards ''to be equated with a state court judgment.'' *Id.* This requires careful review of the administrative record ''to ensure that, at a minimum, it meets the state's own criteria necessary to require a court of that state to give preclusive effect to the state agency's decisions.'' *Id.* We also noted that although a federal court should ordinarily give preclusive effect when the state court would do so, ''there may be occasions where a state court would give preclusive effect to an administrative decision that failed to meet the minimum criteria set down in *Utah Construction*.''[2] *Id.* at 719, n. 13. However, we determined that there were no special circumstances requiring us to look beyond the state's preclusion law, because California had already adopted the *Utah Construction* standard. *Id.* at 719–20 & n. 13.

If *Plaine* left any doubt as to the preclusive effect we will give to unreviewed state agency determinations in cases such as Miller's, it was eliminated in *Eilrich v. Remas*, 839 F.2d 630 (9th Cir.1988), *cert. denied*, 488 U.S. 819, 109 S.Ct. 60, 102 L.Ed.2d 38 (1988). Eilrich was a municipal police officer discharged after making certain public statements. There, we reiterated our holding in *Plaine* that the only question, in light of California's incorporation of the *Utah Construction* standard, was whether the administrative hearing met the requirements of California law such that a California court would have accorded the determination preclusive effect. *Id.* at 633. We also reiterated that because an adequate opportunity for de novo judicial review was available under California law, Eilrich could not '' 'obstruct the preclusive use of the state administrative decision simply by foregoing [the] right to appeal.' '' *Id.* at 632 (quoting *Plaine*, 797 F.2d at 719 n. 12); *see also Guild Wineries*, 853 F.2d at 761–62 (''alleged faulty reasoning must be

---

**2.** We determined, for example, in *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1283–84 (9th Cir.1986) that an informally administered unemployment benefits hearing did not provide plaintiff with an adequate opportunity to litigate factual issues related to an age discrimination claim. We therefore declined to afford preclusive effect to the decision, regardless of whether the state court would have done so.

pursued on direct appeal and does not justify denying claim preclusive effect").[3]

## B

There is no genuine dispute that California would give preclusive effect to the judgment of the Civil Service Commission had Miller brought his § 1983 action in state court. In *Swartzendruber v. City of San Diego*, 3 Cal. App.4th 896, 5 Cal.Rptr.2d 64, 71 (1992), the court gave preclusive effect to the unreviewed findings of the City Civil Service Commission. The facts are remarkably similar to the facts here. Swartzendruber was terminated for not obeying a direct order to appear for work in a uniform. The Commission upheld her termination, and she did not seek review under §§ 1094.5 and 1094.6. She then sued in state superior court, alleging, in part, that her civil rights had been violated.

The *Swartzendruber* court held that, unless state court review of the administrative findings is sought, "an administrative hearing adjudication binds the parties on the issues litigated." *Id.* The court's ultimate conclusion rests on both collateral estoppel and res judicata grounds.

To determine whether the "issue" of Swartzendruber's civil rights had been determined, the court examined the scope of the cause of action "to determine if it encompasses the same primary right that was at stake in the Commission proceeding." *Id.* at 71. The court concluded that Swartzendruber's allegations that her federal civil rights had been violated merely restated her cause of action for wrongful termination in constitutional terms. The same primary right, the right to continued employment, was at stake in both actions. Because the issue of her right to employment had already been adjudicated, Swartzendruber was collaterally estopped from relitigating the issue of her termination in the guise of a § 1983 action alleging violations of her civil rights.

The court also applied principles of res judicata to Swartzendruber's "claim" that her civil rights had been violated. It held that Swartzendruber's failure to "interpose before the Commission any defense to the charge of insubordination, including defenses that the City's actions violated her civil rights," was fatal to her § 1983 claim. The court quoted the following language of *Takahashi v. Board of Education*, 202 Cal.App.3d 1464, 249 Cal.Rptr. 578, 591 (1988), *cert. denied*, 490 U.S. 1011, 109 S.Ct. 1654, 104 L.Ed.2d 168 (1989):

> There can be no justification for plaintiff's position that she should be permitted to fail to assert at the administrative hearing constitutional and civil rights violations as reasons that made her termination wrongful, fail to prevail on the writ without attempting to urge or to bring before the court those reasons, and then be allowed to recover damages in this consolidated action that resulted from termination of her employment alleged to be wrongful based on those same reasons.

*Swartzendruber*, 5 Cal.Rptr.2d at 72.

■ *Swartzendruber* dictates the preclusive effect of the civil service commission in this case. Miller, in his complaint in district court, restates his wrongful termination contentions in constitutional terms. Whether characterized as the "issue" of the right to continued employment or as the "claim" of a civil rights violation, the unreviewed finding

---

**3.** Miller cites *Patsy v. Board of Regents of Florida*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), and *Sisk v. CSO Branch*, 974 F.2d 116 (9th Cir.1992), for the proposition that he is not required to exhaust administrative remedies prior to filing suit under § 1983. These decisions are inapposite. Nothing prevented Miller, *prior to* his appeal to the Civil Service Commission, from filing suit in either state or federal court under § 1983. No exhaustion requirement has been imposed on Miller. It is Miller's election to pursue his claim initially in an administrative forum, and to forego his right to seek judicial review in state court, which requires us to determine whether that decision is binding on all that was, or could have been, determined there.

of the administrative tribunal precludes further litigation of Miller's contentions.

### III

Miller interposes various objections to the application of *Swartzendruber* to his claim. First, he argues that *Swartzendruber* should not be applied retroactively. He further argues that, even if *Swartzendruber* may be applied retroactively, it does not apply to the facts of this case because certain procedural safeguards were not present and because the Commission is not composed of lawyers. We reject these arguments.

### A

■ The Supreme Court recently announced the standard for determining the retroactive application of a new rule announced in a civil case. It stated:

> "When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule."

*Harper v. Virginia Dep't of Taxation,* —— U.S. ——, ——, 113 S.Ct. 2510, 2517, 125 L.Ed.2d 74 (1993). This decision abandoned the former approach of *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), which had employed a three-pronged test to determine the retroactive effect of new rules announced in civil cases.[4]

The California Supreme Court has not spoken on whether it will adopt the *Harper* analysis for purposes of determining the retroactivity of California civil decisions. California has previously applied *Chevron Oil* to determine the retroactive effect of civil cases. *See Casas v. Thompson,* 42 Cal.3d 131, 140–42, 228 Cal.Rptr. 33, 38–39, 720 P.2d 921,

*cert. denied,* 479 U.S. 1012, 107 S.Ct. 659, 93 L.Ed.2d 713 (1986). The California Supreme Court noted that "[t]he preliminary finding necessary to support a determination of non-retroactivity is that the decision must establish a new principle of law by overruling clear past precedent or by deciding an issue of first impression whose resolution was not clearly foreshadowed." *Casas,* 42 Cal.3d at 141, 228 Cal.Rptr. at 39, 720 P.2d at 927.

Here, the district court applied the *Chevron Oil* factors and determined that *Swartzendruber* should be applied retroactively. Because the Supreme Court has abandoned *Chevron Oil* and because analysis of its three factors do not appear to be an independent requirement of the California Supreme Court, we need not engage in such an analysis.

Under *Harper,* the decision in *Swartzendruber* would apply retroactively.

We note, however, that even if California decided to adhere to the *Chevron Oil* factors, we would still agree with the district court in this case. *Swartzendruber* neither overrules past precedent nor decides an issue of first impression whose resolution was not clearly foreshadowed. Rather, *Swartzendruber* is completely in line with the logical progression of California law in the area of administrative preclusion. *See Westlake Community Hosp. v. Superior Ct.,* 17 Cal.3d 465, 131 Cal.Rptr. 90, 551 P.2d 410 (1976); *Knickerbocker v. City of Stockton,* 199 Cal.App.3d 235, 244 Cal.Rptr. 764 (1988); *Takahashi,* 249 Cal.Rptr. at 589–91. Indeed, the *Swartzendruber* decision breaks no new ground on administrative estoppel. Finally, we see no inequity resulting from retroactive application. Miller was notified of the mandamus review available to him after the adverse administrative decision. He was represented by counsel, who was in a position to evaluate the likely effect, under California law, of failure to seek mandamus.

---

4. *Chevron Oil* required consideration of three factors: (1) whether the decision established a new principle of law, either by overruling clear past precedent on which the litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed; (2) whether, considering the prior history of the rule and its purpose and effect, retrospective application would have further retarded its operation; and (3) whether retroactive applications would have produced substantial inequitable results. 404 U.S. at 106–07, 92 S.Ct. at 355–56.

■ We hold that *Swartzendruber* applies retroactively.[5]

### B

■ Miller argues that *Swartzendruber* should not apply to this case because the County Civil Service Commission is not a creature of the California Administrative Procedure Act, Cal.Gov't Code § 11500, *et seq.* It is, rather, an administrative body authorized to hear appeals of dismissals, demotions, and suspensions. Santa Cruz Cty. Ord. § 3.24.010, *et seq.* Miller asserts that this distinction between *Swartzendruber* and this case is fatal to the Commission's claim of preclusion. We disagree.

The protective provisions of the California APA do not define the minimum procedural safeguards which must be afforded before the California courts will accord an administrative decision preclusive effect. Neither *Swartzendruber* nor its predecessors rely on presence of APA safeguards in determining that an agency decision precluded further litigation. For example, *Westlake* involved the decision of a "tribunal of a private association." 131 Cal.Rptr. at 101, 551 P.2d at 421. Yet the court held that a plaintiff must first succeed in overturning the quasi-judicial ac-

tion before filing suit, as this "will simplify court procedures by providing a uniform practice of judicial, rather than jury, review of quasi-judicial administrative decisions." *Id.* Moreover, administrative preclusion has been acknowledged in cases involving public agencies not encompassed by the California APA, such as cities. *E.g., Knickerbocker,* 244 Cal.Rptr. 764.

This policy obtains even though the allegations relate to procedural defects, such as the absence of provisions for pretrial discovery.[6] In *Holder v. California Paralyzed Veterans Ass'n,* 114 Cal.App.3d 155, 170 Cal.Rptr. 455 (1980), the plaintiff sued for damages, rather than seeking review pursuant to § 1094.5, after his expulsion from the California Paralyzed Veterans Association was upheld in an administrative hearing. The court explained that the plaintiff "claims that the hearing procedure was so defective as to deny him fundamental due process, but such a procedural defect is a common ground for issuance of a writ of mandate invalidating a quasi-judicial decision." *Id.* at 460. This analysis is supported by *Westlake,* which notes that once the reviewing court determines that an administrative decision "cannot stand, either because of a substantive or procedural de-

5. Miller also asserts that *Swartzendruber* should not be considered controlling state law. A state appellate court's announcement of a rule of law " 'is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.' " *Hicks v. Feiock,* 485 U.S. 624, 630, 108 S.Ct. 1423, 1428, 99 L.Ed.2d 721 (1988) (quoting *West v. American Tel. & Tel. Co.,* 311 U.S. 223, 237–38, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940)). Miller argues that the California Supreme Court's depublication of *Sanders v. City & County of San Francisco,* 6 Cal.App.4th 626, 8 Cal. Rptr.2d 170 (1992), which followed *Swartzendruber,* indicates the high court's disapproval of *Swartzendruber.* First, the depublication of *Sanders* is irrelevant. *See, e.g., People v. Saunders,* 5 Cal.4th 580, 592, 20 Cal.Rptr.2d 638, 643, 853 P.2d 1093, 1098 (1993); *see also* Cal.R.Ct. 979(e) (an order directing depublication "shall not be deemed an expression of the opinion of the Supreme Court of the correctness of the result reached by the decision or of any of the law set forth in the opinion"). Second, *Sanders* relies on *Swartzendruber* for a proposition uncontested here, namely that a claim for sex discrimination under the California Fair Employment and Housing Act is not barred by the plaintiff's

failure to seek mandamus, because recourse to the FEHA administrative procedures eliminates the need to pursue administrative mandamus pursuant to § 1094.5. *Sanders,* 8 Cal.Rptr.2d at 177. The depublication of *Sanders,* even if we were inclined to consider it evidence, tells us nothing about the California Supreme Court's opinion of those principles of *Swartzendruber* we are applying here. Given the body of decisional law upon which *Swartzendruber* rests, there is no persuasive data that the California Supreme Court would decide otherwise.

6. Miller also asserts that the hearing procedure was defective because county commissions cannot, under California law, issue subpoenas. We are not convinced that state law prevents counties from granting civil service commissions the subpoena power. *See Dibb v. County of San Diego,* 18 Cal.App.4th 1520, 23 Cal.Rptr.2d 64, 67–68, *review granted,* 26 Cal.Rptr.2d 475, 864 P.2d 1036 (1993). The record is unclear as to whether the County Civil Service Commission has the power to issue subpoenas. Nevertheless, for the reasons stated in text, the absence of formal trial procedures has not historically prevented California courts from according preclusive effect to administrative decisions.

fect, the prevailing party is entitled to initiate a tort action...." *Westlake,* 131 Cal.Rptr. at 101–02, 551 P.2d at 421–22.

## C

■ Nor do we agree with Miller that the administrative decision is not binding because the Commission need not be constituted of lawyers. We are aware that our holding on this matter conflicts with that of the Third Circuit in *Edmundson v. Borough of Kennett Square,* 4 F.3d 186 (3rd Cir.1993). In *Edmundson,* the court determined that an administrative agency consisting of laypersons lacks the expertise to issue binding pronouncements in the area of constitutional law. *Id.* at 193. The commission's lack of expertise rendered its unreviewed finding that an employee's comments were not protected by the First Amendment not binding in a subsequent action under § 1983. *Id.*

*Edmundson* relies largely on the Supreme Court's "careful use of the word 'factfinding'" in *Elliot. Id.* at 193. *Edmundson* notes that "*Elliott* was quite specific ... in referring consistently throughout the opinion to administrative or agency 'factfinding.'" *Edmundson,* 4 F.3d at 192. *Edmundson* construes the use of the word "factfinding" in a limiting manner, holding that preclusion principles do not apply beyond administrative factfinding.

We decline to adopt the conclusions reached in *Edmundson.* First of all, we will not follow a decision which conflicts with those of our own circuit. As the *Edmundson* court itself acknowledges, its holding con-

flicts directly with our decision in *Eilrich. Id.* at 193.[7]

Second, in light of our prior holdings that legal conclusions are entitled to preclusive effect, the distinction made in *Edmundson* between lay decisionmakers and attorney decisionmakers would only create more confusion.[8] There is, moreover, no sound basis for according preclusive effect only to those legal determinations rendered by lawyers. Were we to focus on whether there was a statutory requirement that agency tribunals be composed of lawyers, we would create a rule which requires more of administrative decisionmakers than Article III of the Constitution requires of us. Article III does not require that we be lawyers to serve on the federal bench, yet we are fully capable of rendering binding decisions on constitutional matters. It similarly defies reason to focus on the *fact* of whether the agency decisionmakers are lawyers, whether the statute requires they be lawyers or not.[9]

■ Third, the *Edmundson* rule engrafts onto federal common law a distinction unrecognized by the Supreme Court. The Supreme Court has directed us to determine preclusive effect with reference to whether the administrative agency is acting, fundamentally, in a judicial capacity. *Utah Construction,* 384 U.S. at 422, 86 S.Ct. at 1560. As the Court explained in *Astoria Federal Savings and Loan Ass'n v. Solimino,* 501 U.S. 104, 107–08, 111 S.Ct. 2166, 2169, 115 L.Ed.2d 96 (1991):

> [R]epose is justified on the sound and obvious principle of judicial policy that a losing litigant deserves no rematch after a defeat

---

7. As we have noted, *Eilrich* and *Plaine* establish that we will give preclusive effect to the legal as well as the factual decisions of administrative tribunals, if the courts of the state would do so and if the minimum requirements of *Utah Construction* are met. If this was overreaching, a question upon which we express no opinion, only an en banc panel can correct it.

8. Although *Edmundson* purports to turn on the distinction between lay and attorney decisionmakers, the case is certainly open to the broader interpretation that no administrative agency may issue binding rulings on matters of constitutional law. Reasonable minds could differ on whether such a rule would comport with principles of finality and comity while at the same time serv-

ing important federal interests. But such a result would make much more sense than a preclusion rule which turns on the profession of the adjudicators.

9. Even the *Edmundson* court recognized that its holding did not turn on such a "fortuitous event." *Id.* at 192 n. 3. This inquiry would create the worst sort of trap for the unwary, requiring analysis, in future cases, of just how much legal training an adjudicator must have, whether the adjudicator must be admitted to the bar of a particular state or admitted to practice at all, whether the adjudicating panel must be composed partially or entirely of lawyers, and so on.

fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise. To hold otherwise would, as a general matter, impose unjustifiably upon those who have already shouldered their burdens, and drain the resources of an adjudicatory system with disputes resisting resolution. The principle holds true when a court has resolved an issue, and should do so equally when the issue has been decided by an administrative agency, be it state or federal, which acts in a judicial capacity.

(citations omitted). We deny preclusive effect, in general, when the adjudicator lacks jurisdiction to determine an issue, *Shaw v. Calif. Dept. of Alcoholic Beverage Control*, 788 F.2d 600, 608 (9th Cir.1986), when the parties lacked an adequate opportunity to litigate an issue, *Mack*, 798 F.2d at 1283, or when some other aspect of due process, the "full and fair opportunity" to litigate, is missing, *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 480–81, 102 S.Ct. 1883, 1897, 72 L.Ed.2d 262 (1982). The absence of a statutory requirement that an agency adjudicator have legal training simply does not implicate these concerns.

Finally, the availability of judicial review, even if not always determinative, is of critical importance here. *See Los Angeles Police Protective League v. Gates*, 995 F.2d 1469, 1474–75 (9th Cir.1993) (holding that plaintiff was "obligated" to challenge findings of administrative agency by direct appeal to state court under § 1094.5). Where, as here, the agency adjudication meets the requirements of due process, and de novo judicial review is available, *Eilrich*, 839 F.2d at 622, concerns of comity and finality counsel against denying preclusive effect.[10]

### IV

■ Finally, Miller argues that, even if his § 1983 claims against the Commission are barred by the doctrines of res judicata and collateral estoppel, his claims against the individual defendants are not. We reject this contention. In both *Swartzendruber* and *Takahashi* the preclusive effect of the administrative ruling prevented litigation of § 1983 claims against the individual defendants named, as well as the administrative agency defendants. *See, Takahashi*, 249 Cal.Rptr. at 586. Here, as in *Takahashi*, the individually named defendants were employees acting with in the course and scope of their employment in terminating Miller. *Id.* Because they have been sued solely because of their involvement in the termination process, the adverse finding before the Commission prevents Miller from asserting an inconsistent claim against those defendants here. *See id.*

### V

■ We affirm the judgment of the district court. In so doing, we reiterate our longstanding policy, arising out of concerns of comity and finality, of respecting state court systems for review of administrative decisions. *Eilrich*, 839 F.2d at 633. California has made it quite clear that a discharged civil servant who *elects* an administrative forum for review of his or her termination must succeed in overturning that administrative decision through the judicial mandamus review procedure prior to filing a suit for damages on claims arising out of the termination. *See, e.g., Swartzendruber*, 5 Cal. Rptr.2d at 69. So long as the minimum criteria of *Utah Construction* are met, we will defer to the considered judgment of the courts of California that an unreviewed agency determination, such as that involved here, is equivalent to a state court judgment entitled to res judicata and collateral estoppel effect. Any other result would render the administrative forum a place for meaningless dry runs of wrongful termination claims destined to be assailed on constitutional grounds in federal court.

AFFIRMED.

---

**10.** It should be remembered, in this context, that state courts have concurrent jurisdiction over § 1983 claims; we have no reason to suspect that the courts of California could not, if given the opportunity, correct an erroneous conclusion on a constitutional issue.