FILED

FEB 1 2017

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**
**OF THE NINTH CIRCUIT**

In re:                                    )   BAP No.  SC-15-1335-YJuF
                                          )
STEPHEN F. LOPEZ,                         )   Bk. No.  12-00796-CL7
                                          )
                              Debtor.     )   Adv. No. 12-90127-CL
_____        )
                                          )
STEPHEN F. LOPEZ,                         )
                                          )
                    Appellant,            )
v.                                        )   **MEMORANDUM**[*]
                                          )
VLADIMIR RAICEVIC, Trustee;               )
IMELDA RAICEVIC,                          )
                                          )
                    Appellees.            )
_____        )

Argued and Submitted on January 19, 2017
at San Diego, California

Filed - February 1, 2017

Appeal from the United States Bankruptcy Court
for the Southern District of California

Honorable Christopher B. Latham, Bankruptcy Judge, Presiding

_____

Appearances:   Richard R. Roy argued on behalf of Appellant
               Stephen F. Lopez; Jerry D. Cluff argued on behalf
               of Appellees Vladimir Raicevic, Trustee, and
               Imelda Raicevic.

_____

Before: YUN[**], JURY, and FARIS, Bankruptcy Judges.

_____

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, see Fed. R. App. P. 32.1, it has no precedential value. See 9th Cir. BAP Rule 8024-1.

[**] Hon. Scott H. Yun, United States Bankruptcy Judge for the Central District of California, sitting by designation.

1

# I. INTRODUCTION

This appeal stems from a transaction in which debtor Stephen F. Lopez ("Lopez") represented Hardy Matthew Travis ("Mr. Travis") and Launi Travis ("Mrs. Travis") (collectively, the "Travises") as their attorney. Vladimir Raicevic and Imelda Raicevic[1] (collectively, the "Raicevics") obtained a fraud judgment in state court against Lopez and his law firm based on the circumstances of that transaction. The Raicevics then brought an adversary proceeding against Lopez in his bankruptcy case seeking to have their debt excepted from discharge under § 523(a)(2)(A).[2] They filed a motion for summary judgment based on their fraud judgment and the doctrine of issue preclusion[3]. Lopez objected to the motion for summary judgment and brought his own cross-motion for summary judgment. The bankruptcy court

---

[1] Andjelka Raicevic and Vojo Raicevic initially made the loans in question and entered into the agreement that is the subject of their fraud claims. Vojo Raicevic subsequently passed away and Imelda Raicevic pursued the state court action on his behalf, along with Andjelka Raicevic on her own behalf. They then initiated the adversary proceeding. Andjelka Raicevic subsequently passed away and Vladimir Raicevic substituted into the adversary proceeding on her behalf. In order to reduce confusion, and because their interests were aligned during the different stages of litigation, we will sometimes refer collectively to all four Raicevic family members as the "Raicevics."

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[3] The parties use the term collateral estoppel, which is interchangeable with issue preclusion. We use the more modern terminology of issue preclusion.

granted the Raicevics' motion, finding their debt nondischargeable under § 523(a)(2)(A), and denied Lopez's motion. Lopez appealed both rulings, and we AFFIRM.

## II. FACTS AND PROCEDURAL HISTORY

**A.    Prepetition Events**

### 1. The Underlying Transactions

Andjelka Raicevic and Vojo Raicevic sold real property to Mr. Travis as trustee of a family trust in 1998, and took back a $1.45 million promissory note secured by that real property.[4] The Travises later substituted their residence as collateral for the loan instead of the original real property. They also pledged their residence as collateral for an additional loan of $100,000 made in 2003. The Travises began to have difficulty keeping the payments current on the two loans in April 2004.

### 2. Lopez's Involvement

In an attempt to deal with their financial difficulties, the Travises engaged Lopez to seek a further substitution of collateral on the two notes. Lopez sent a May 27, 2004 transmittal letter to Andjelka Raicevic and Vojo Raicevic, along with a proposed pledge agreement in which the Travises would substitute all of their personal property assets as collateral in place of their residence. Lopez represented in the transmittal letter that, in exchange for the collateral swap, the Travises would keep the note current, personally guarantee the note,

---

[4] This factual summary is taken in part from the opinion of the California Court of Appeal, Fourth Appellate District, which in turn was derived from the undisputed facts in the summary judgment proceedings in the parties' underlying state court litigation.

3

pledge all personal assets, and obtain permanent financing for the shopping center that would provide for either continuing payments or full payoff of the note. The Raicevics executed the proposed pledge agreement and reconveyed their security interest in the residence in reliance on the representations in Lopez's letter. Lopez did not prepare a UCC-1 statement that would have perfected the security interest in the Travises' personal property. Around the same time, the Travises separated and sold their residence. But for the reconveyance, the Raicevics would have received $588,000 from the proceeds of the sale. In April 2005, the Travises also sold the shopping center for more than $40 million, netting $3.5 million, but they did not repay the Raicevics.

### 3. Ensuing Litigation

The Raicevics filed a state court action against Lopez, Mr. Travis, and Mrs. Travis, among others, in March 2007. Mr. Travis passed away on May 29, 2007, and his estate entered into a settlement with the Raicevics on July 30, 2009. On July 9, 2009, Mrs. Travis stipulated to a judgment in the amount of $1.5 million. Mrs. Travis filed a bankruptcy petition under chapter 7 on April 8, 2010, and the Raicevics filed a complaint to have her debt under the stipulated judgment declared nondischargeable.

The state court case against Lopez and his law firm went to trial between October 25 and November 3, 2011, on intentional misrepresentation, negligent misrepresentation, and financial elder abuse causes of action. The jury trial involved 13 witnesses and more than 60 exhibits. On November 10, 2011, the

4

Superior Court for the State of California, County of San Diego ("Superior Court") entered a Joint and Several Judgment against Stephen F. Lopez and Geraci & Lopez after Trial by Jury (the "Special Verdict"). The Special Verdict contains the following specific findings against Lopez regarding the elements of a claim for intentional misrepresentation:

- He intentionally made a false representation of an important fact or facts to Vojo and Andjelka Raicevic;
- He knew that the representation was false or made the representation recklessly and without regard for its truth;
- He intended that Vojo and Andjelka Raicevic rely on the representation;
- Vojo and Andjelka Raicevic reasonably relied on the representation;
- Vojo and Andjelka Raicevic's reliance on Lopez's representation was a substantial factor in causing damage to them; and
- Vojo and Andjelka each suffered economic damages of $294,000 for a total of $588,000.

Lopez sought a new trial and judgment notwithstanding the verdict, which the Superior Court denied by minute order entered on January 9, 2012. Lopez filed a bankruptcy petition under chapter 7 on January 23, 2012.

**B.    Postpetition Events**

On February 1, 2012, the bankruptcy court in Mrs. Travis's case entered its Findings of Fact and Conclusions of Law re

5

Complaint for Nondischargeability (the "Travis Findings") after trial. The bankruptcy court in that case determined that Mrs. Travis's stipulated judgment was dischargeable.

On April 13, 2012, the Raicevics filed an adversary complaint against Lopez seeking to except his debt to them from discharge under § 523(a)(2)(A). The complaint was amended twice, but continued to contain a single cause of action under § 523(a)(2)(A).

The Superior Court's judgment was subsequently amended on December 20, 2013, to add Lopez's law firm partner, Alan L. Geraci, as a judgment debtor and to reflect the addition of costs, pre-judgment interest, and attorneys' fees. Lopez appealed the judgment and the amended judgment of the Superior Court. The California Court of Appeal, Fourth Appellate District, entered an opinion on January 23, 2015, affirming in part and reversing in part. It struck the award of attorneys' fees, but affirmed the judgment in all other respects. Lopez then filed a petition for review with the Supreme Court of California, which was denied on April 15, 2015.

On June 11, 2015, the Superior Court entered its Amended Judgement against Stephen F. Lopez, Alan L. Geraci, and Geraci & Lopez after Trial by Jury and After Decision on Appeal ("Final Amended Judgment"). The Final Amended Judgment left undisturbed the jury's findings in the Special Verdict, but removed the award of attorneys' fees as directed by the final ruling of the Court of Appeal.

The Raicevics and Lopez then brought cross-motions for summary judgment in the adversary proceeding on July 31, 2015.

The bankruptcy court denied Lopez's motion, and granted the Raicevics' motion and entered judgment on September 17, 2015. This timely appeal followed.

### III. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

### IV. ISSUES

1. Whether the bankruptcy court properly applied the doctrine of issue preclusion in granting the Raicevic's motion for summary judgment and denying Lopez's motion for summary judgment.

2. Whether the bankruptcy court erred in its application of the "last in time" rule for applying issue preclusion.

3. Whether the bankruptcy court erred when it ruled on summary judgment based on the record before it.

### V. STANDARDS OF REVIEW

We review de novo the bankruptcy court's summary judgment rulings and its determination to except a debt from discharge. Ilko v. Cal. St. Bd. of Equalization (In re Ilko), 651 F.3d 1049, 1052 (9th Cir. 2011); Su v. Su (In re Su), 290 F.3d 1140, 1142 (9th Cir. 2002). When we review a ruling de novo, we give no deference to the bankruptcy court's decision. Univ. of Wash. Med. Ctr. v. Sebelius, 634 F.3d 1029, 1033 (9th Cir. 2011).

We also review de novo the bankruptcy court's determination that issue preclusion is available. Miller v. Cty. of Santa Cruz, 39 F.3d 1030, 1032 (9th Cir. 1994). If issue preclusion is available, we then review the bankruptcy court's application of the doctrine for an abuse of discretion. Id. A bankruptcy court

7

abuses its discretion if it applies the wrong legal standard, or if it misapplies the correct legal standard by making factual findings that are illogical, implausible, or without support from inferences that may be drawn from the facts in the record. U.S. v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).

## VI. DISCUSSION

**A. Summary Judgment**

The bankruptcy court's grant of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. A party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact, and establishing that it is entitled to judgment as a matter of law as to those matters upon which it has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The court must view the evidence presented on the motion in the light most favorable to the opposing party. Avalos v. Baca, 596 F.3d 583, 587 (9th Cir. 2010)(citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)). The opposing party must then make a sufficient showing on all matters placed in issue by the motion as to which it has the burden of proof at trial. Celotex Corp. at 323-24.

"[T]he substantive law will identify which facts are material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. A factual dispute is genuine where the evidence is such that a reasonable jury could return a

8

verdict for the nonmoving party. Id. In this case, the bankruptcy court granted the Raicevics' motion for summary judgment after applying issue preclusion to the Final Amended Judgment, and denied Lopez's motion for summary judgment after declining to apply issue preclusion to the Travis Findings.

**B. Issue Preclusion as Applied to the Final Amended Judgment**

  1. Availability of Issue Preclusion

Issue preclusion[5] applies in proceedings to except a debt from discharge under § 523(a). Grogan v. Garner, 498 U.S. 279, 285 n.11 (1991); Harmon v. Kobrin (In re Harmon), 250 F.3d 1240, 1245 (9th Cir. 2001). It bars successive litigation of an issue or fact that was actually litigated and resolved in a prior judgment. Grogan at 284-85.

A federal court must give a state court judgment the same preclusive effect that it would receive in that state. Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985). In California, the requirements for issue preclusion are that (1) the issue must be identical to that decided in the former proceeding, (2) the issue must have actually been litigated in the prior proceeding, (3) the issue must have been necessarily decided, (4) the decision in the prior proceeding must be final and on the merits, and (5) the party against whom preclusion is

---

[5] In his brief and statement of issues, Lopez repeatedly refers to the doctrine of res judicata. Although he appears to use res judicata and issue preclusion interchangeably, these are actually two related but distinct doctrines. Because the bankruptcy court's order granting the Raicevics' motion for summary judgment is based on issue preclusion, we limit our analysis to that doctrine.

9

sought must be the same. Cal-Micro, Inc. v. Cantrell (In re Cantrell), 329 F.3d 1119, 1123 (9th Cir. 2003).

a. Identical Issues

The first element of issue preclusion requires that identical issues were decided in the former proceeding. This element is satisfied because the Superior Court rendered judgment on the Raicevics' causes of action for intentional misrepresentation, or fraud, which requires findings that are the same as those needed for a cause of action under § 523(a)(2)(A).

Section 523(a)(2)(A) excepts from discharge debts that are the result of "false pretenses, false representation, or actual fraud," other than a statement respecting the debtor's financial condition. To prevail under § 523(a)(2)(A), a plaintiff must prove that:

(1) The debtor made a representation;

(2) The debtor knew the representation was false at the time it was made;

(3) The debtor made the representation with the intent to deceive the plaintiff;

(4) The plaintiff relied on the representation; and

(5) The plaintiff sustained a loss as the proximate result of the misrepresentation.

Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219, 1222 (9th Cir. 2010). A plaintiff's reliance under § 523(a)(2)(A) must be justifiable. Field v. Mans, 516 U.S. 59, 73-75 (1995). A finding of fraud under California law requires:

(1) A misrepresentation;

(2) Knowledge of falsity;

10

(3) Intent to defraud, i.e. to induce reliance;

(4) Justifiable reliance; and

(5) Resulting damage.

Engalla v. Permanente Med. Grp., Inc., 15 Cal.4th 951, 973-74 (1997). The elements for fraud under § 523(a)(2)(A) and California law are the same. A finding of fraud under California law therefore is identical to a finding of nondischargeability under § 523(a)(2)(A) for issue preclusion purposes in a nondischargeability action.

### b. Actually Litigated in the Prior Proceeding

The issue of Lopez's fraud was also actually litigated before the Superior Court. The Final Amended Judgment contains specific findings that Lopez intentionally made false representations to Vojo Raicevic and Andjelka Raicevic. It also states that Lopez knew the representations were false, or acted recklessly without regard for the truth,[6] and he intended Vojo Raicevic and Andjelka Raicevic to rely on them. Finally, the Final Amended Judgment relates that Vojo Raicevic and Anjelka Raicevic relied on the representations and their reliance was a substantial factor in causing their damages. Each of the elements for a claim of fraud under § 523(a)(2)(A) and California law were actually litigated in the Superior Court because the Final Amended Judgment contains specific findings as to each.

---

[6] Reckless disregard for the truth of a statement can satisfy the requirement for fraudulent intent under § 523(a)(2)(A). Household Credit Servs., Inc. v. Ettell (In re Ettell), 188 F.3d 1141, 1145 n.4 (9th Cir. 1999).

11

### c. Necessarily Decided

The issue of fraud was also necessarily decided in the Final Amended Judgment because the jury only awarded compensatory damages on the two causes of action for intentional misrepresentation. The jury found in Lopez's favor on the causes of action for financial elder abuse and found against him on the causes of action for negligent misrepresentation but awarded no additional damages on account of those claims. The damages awarded are therefore premised on the intentional misrepresentation causes of action and those issues were necessarily decided. The third element for issue preclusion is satisfied.

### d. Final Decision on the Merits

The fourth element for issue preclusion is also satisfied because the Final Amended Judgment is a final decision on the merits. It is a judgment on the merits because it followed after an extensive jury trial. It has also now become final. Under California law, a judgment is not final for preclusion purposes while it is still open to attack through appeal. Geographic Expeditions, Inc. v. Estate of Lhotka, 599 F.3d 1102, 1105 n.3 (9th Cir. 2010) (citing Abelson v. Nat'l Union Fire Ins. Co., 28 Cal.App.4th 776, 787 (1st Dist. 1994)); Nat. Union Fire Ins. Co. of Pittsburgh, PA v. Stites Prof. Law Corp., 235 Cal. App. 3d 1718, 1726 (2nd Dist. 1991); Eichman v. Fotomat Corp., 759 F.2d 1434, 1439 (9th Cir. 1985). Lopez's petition for review with the Supreme Court of California was denied on April 15, 2015. The Superior Court then entered its Final Amended Judgment on June 11, 2015. There has been no further appeal of the Final

12

Amended Judgment and that decision is now final and on the merits.

### e. Against the Same Party

The final threshold element for issue preclusion requires that the party against whom issue preclusion is sought is the same as the party in the prior litigation. The Raicevics sought to apply issue preclusion against Lopez through their summary judgment motion. Lopez was named as a defendant and held jointly and severally liable for the Raicevics' damages in the Final Amended Judgment. He is also the defendant in the § 523(a)(2)(A) nondischargeability action that is the subject of this appeal. Therefore, this element is satisfied. All five of the threshold elements for the application of issue preclusion under California law are satisfied and the doctrine was available to the bankruptcy court.

### 2. Application of Issue Preclusion

Having determined de novo that issue preclusion is available, we now review the bankruptcy court's decision to apply the doctrine under an abuse of discretion standard. Miller, 39 F.3d at 1032.

### a. Public Policy

After all of the threshold elements of issue preclusion are satisfied, the court then looks to the public policies underlying the doctrine to determine whether it should be applied in a particular circumstance. Lucido v. Superior Court, 51 Cal. 3d 335, 344-45 (1990). The public policies underlying the doctrine are "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from

13

harassment by vexatious litigation." Id. at 345. The bankruptcy court concluded that the public policies underlying issue preclusion were furthered because application of the doctrine would prevent re-litigation of the same issues between the same individuals and would put an end to an exhaustive legal battle between the parties. Therefore, application of the doctrine protected the integrity of the judicial system's prior decisions, promoted judicial economy in reducing further litigation, and protected the Raicevics from harassment by vexatious re-litigation of the same issues.

We do not blindly or mechanically apply the doctrine of issue preclusion, but rather look to the same underlying policies considered by the bankruptcy court. Lopez had ample opportunity to litigate the issue of his fraud before the Superior Court in a multi-day jury trial with more than a dozen witnesses and over 60 exhibits. He then appealed the entire judgment, resulting in a detailed and lengthy opinion from the appellate court. The appellate court affirmed the judgment in all respects except for the award of attorneys' fees. Lopez then sought review by the California Supreme Court, which was denied. Lopez does not dispute any of these facts - his arguments are instead essentially that it is unfair that the jury and two courts have not believed his version of the underlying events. However, Lopez has had an ample opportunity to litigate the issue of his fraud in multiple forums; and applying issue preclusion in this instance furthers the public policies of preservation of the integrity of the judicial system and promotion of judicial economy and protects the Raicevics from harassment by vexatious

14

litigation. The bankruptcy court did not abuse its discretion when it determined that the public policies behind issue preclusion warranted its application in this case.

### b. Manifest Injustice

Lopez also argues that the application of issue preclusion is discretionary and the bankruptcy court should have declined to apply it to prevent manifest injustice. He asserts that he was only acting on behalf of his clients and had no knowledge of the clients' fraudulent intent. Lopez states that there is no evidence of his fraudulent intent and attorneys must look out for the interests of their clients.

However, the bankruptcy court did in fact consider Lopez's arguments regarding the fairness of his situation and expressed sympathy, but exercised its discretion and decided to apply preclusive effect to the Final Amended Judgment. The jury in the Superior Court trial also found that Lopez went beyond the actions of an attorney representing his clients when it found him liable for making an intentional misrepresentation. We review the bankruptcy court's exercise of its discretion in applying the doctrine of issue preclusion under an abuse of discretion standard. Miller, 39 F.3d at 1032. Lopez's arguments are contrary to the specific findings of the Superior Court and the appellate court, which determined that Lopez did go beyond the normal advocacy on behalf of a client and commit fraud against the Raicevics. The record before the court supports those conclusions. The bankruptcy court did not abuse its discretion when it applied issue preclusion to the Final Amended Judgment.

15

## C. "Last in Time" Rule and the Travis Findings

Lopez argues that the bankruptcy court erred when it declined to apply issue preclusion to the Travis Findings, instead of the Final Amended Judgment, because the Travis Findings were actually "last in time" and preclusive effect should have been given to that decision. The "last in time" rule states that where there are inconsistent opinions from different courts, preclusive effect will generally be given to the ruling that is last in time. Robi v. Five Platters, Inc., 838 F.2d 318, 322-23 (9th Cir. 1988). This argument fails for several reasons.

### 1. Determination of the "Last in Time" Ruling

First, the Travis Findings are not actually last in time to the Final Amended Judgment. As noted above, a judgment under California law is not final for preclusion purposes until all opportunities for appeal have been exhausted. Geographic Expeditions, Inc., 599 F.3d at 1105 n.3. The Special Verdict entered after the jury trial and the first amended judgment never became final because they were subject to Lopez's appeal. The Final Amended Judgment was entered on June 11, 2015. An appeal from a California trial court must be noticed within 60 days after the superior court clerk serves the notice of entry of the judgment or an endorsed copy of the judgment. Ca. R. Ct. 8.104. Presuming the Final Amended Judgment was noticed out to Lopez within the next few days, the time to appeal would have expired around mid-August 2015. It was only at that time that the Final Amended Judgment became final for preclusion purposes.

The Travis Findings were entered on February 1, 2012. Unlike

16

California law, the finality and preclusive effect of a judgment[7] in the federal courts is not affected by appeal rights. <u>Hawkins v. Risley</u>, 984 F.2d 321, 324 (9th Cir. 1993). The Travis Findings were therefore final for preclusion purposes when they were entered on February 1, 2012. The date of judgment of the Travis Findings predated the Final Amended Judgment by over three years, and the Travis Findings are not actually last in time.

    2. <u>Rationale Behind the "Last in Time" Rule</u>

Second, the rationale behind the "last in time" rule does not apply to the facts of this case. The rationale behind the rule is that by giving effect to the most recent judgment, right or wrong, finality will be achieved and parties will be encouraged to appeal an inconsistent judgment rather than collaterally attack it before a different court. <u>Robi</u>, 838 F.2d at 323. This is because the parties had the opportunity to litigate the issues and to appeal the inconsistent ruling. <u>In re Marriage of Hanley</u>, 199 Cal. App. 3d 1109, 1118 (1st Dist. 1988); <u>see</u> <u>also</u> <u>Treinies v. Sunshine Mining Co.</u>, 308 U.S. 66, 77 (1939).

In the present case, Lopez did exercise his right to appeal the Superior Court judgment against him. The Travis case was not an inconsistent ruling on the same issues, but rather a separate determination of nondischargeability against Mrs. Travis, who had stipulated to a judgment without any findings in the Superior Court proceeding. Lopez could not have appealed the Travis

---

[7] "The date of judgment, not the date of filing" controls in preclusion determinations. <u>Guild Wineries & Distilleries v. Whitehall Co.</u>, 853 F.2d 755, 761 (9th Cir. 1988).

17

Findings, as application of the "last in time" rule would encourage, because he was not a party to that matter and had no rights regarding it. Therefore, application of the "last in time" rule to the Travis Findings would not serve one of its primary purposes.

The bedrock of the "last in time" rule is finality and the prevention of further litigation of matters where ample opportunity has been provided. Contrary to this purpose, Lopez is asking for application of the "last in time" rule so that he can pursue further litigation in the form of a trial before the bankruptcy court on the Raicevics' adversary complaint. This contravenes the rationale behind the rule. Application of the "last in time" rule as urged by Lopez would serve none of its stated purposes and would actually run contrary to them.

3. Application of Issue Preclusion to the Travis Findings

Finally, even if the "last in time rule" were applicable, the bankruptcy court was correct in declining to afford preclusive effect to the Travis Findings and denying Lopez's motion for summary judgment. The court concluded that the elements for issue preclusion were not met because the Travis adversary concerned different issues - Mrs. Travis's fraudulent representations and omissions rather than Lopez's. The issue of Lopez's independent conduct was not before that court and was not actually litigated or necessarily decided. We review the availability of issue preclusion as to the Travis Findings de novo and agree.

"The preclusive effect of a federal-court judgment is determined by federal common law." Taylor v. Sturgell, 553 U.S.

18

880, 891 (2008) (citing Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 507-508 (2001)). Issue preclusion will be applied to federal court judgments where:

(1) there was a full and fair opportunity to litigate the issue in the previous action;
(2) the issue was actually litigated in that action;
(3) the issue was lost as a result of a final judgment in that action; and
(4) the person against whom issue preclusion is asserted in the present action was a party or in privity with a party in the previous action.

U. S. Internal Revenue Serv. v. Palmer (In re Palmer), 207 F.3d 566, 568 (9th Cir. 2000). At least three of the four elements for federal issue preclusion are not met by the Travis Findings, and the bankruptcy court did not err when it declined to afford those findings preclusive effect.

First, there was not a full and fair opportunity to litigate the issue of Lopez's conduct in the Travis nondischargeability proceeding because Lopez was not a party to that proceeding. "A person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit." Taylor, at 892. There was also no opportunity to litigate Lopez's fraud because the only issue before the court in the Travis proceeding was Mrs. Travis's conduct. The case concerned only the nondischargeability of the debt she owed on the stipulated judgment under § 523(a)(2)(A) and (a)(6).

Second, and most importantly, there is no evidence that the issue of Lopez's conduct was actually litigated in the Travis nondischargeability action. The Travis Findings acknowledge that the Raicevics hold a fraud judgment against Lopez and note that

19

this judgment may be available to satisfy their debt. The findings of fact also relate that Lopez prepared all of the documents for the pledge of personal property collateral and release of the real property liens (which is consistent with the judgment against Lopez and related appellate opinion). Out of 26 paragraphs of factual findings, these are the only two mentions of Lopez in the Travis Findings. In contrast, there are extensive factual findings regarding the relative actions and culpability of Mr. Travis and Mrs. Travis. Many of the conclusions of law also appear to be focused on apportioning relative fault, knowledge, and intent between Mr. Travis and Mrs. Travis, with no mention of Lopez. The bankruptcy court in the Travis case was not focused on Lopez's independent actions in making its ruling, and the issue of his fraud was not actually litigated in that proceeding.

Finally, the parties in the Travis case and this case are not the same or in privity. Lopez was not named as a defendant in the Travis case and there is no evidence that he participated in that case. Privity exists where a person's interests are so aligned with a party to litigation that they represent the same rights with respect to the matter being litigated. U.S. v. Bhatia, 545 F.3d 757, 759 (9th Cir. 2008). A nonparty may be bound under federal preclusion law where (1) they enter into an agreement to be bound, (2) there is a pre-existing substantive legal relationship such as successive owners of property or assignee and assignor, (3) the nonparty was adequately represented by a party with the same interests in the suit, (4) the nonparty assumes control over the litigation, (5) the

20

nonparty is a proxy for the party, or (6) there is a special statutory scheme that bars successive litigation by different parties. Taylor, 553 U.S. at 893-95. Four of the exceptions for non-party preclusion do not apply. There is no evidence that Lopez entered into an agreement to be bound by the Travis litigation, that he has a legal relationship with Mrs. Travis, that he and Mrs. Travis have a proxy relationship, or that any special statutory scheme is applicable.

The other two exceptions - control over the litigation and unity of interests - also do not apply based on the record in this case. Lopez did previously represent Mrs. Travis, but there is no indication that he continued to represent her during her own nondischargeability proceeding or that he was otherwise exercising control over that litigation. Instead, Mrs. Travis represented herself in pro per. There is also no indication that Lopez's interests were adequately represented by Mrs. Travis's pro se litigation. It would seem that her interests actually lay in favor of shifting blame to Lopez and Mr. Travis in order to clear herself of wrongdoing. While their interests may have been united during the arrangement of the pledge agreement and proposed collateral exchange, all indications are that those interests diverged when the Raicevics filed suit against Lopez and the Travises in the Superior Court. Lopez was not in privity with Mrs. Travis and none of the exceptions that might bind him to the Travis Findings as a nonparty are present.

Issue preclusion in this case is an affirmative defense and the party asserting it bears the burden of establishing the necessary elements. Taylor at 907. Lopez has failed to do so in

regard to the Travis Findings and the bankruptcy court did not err when it declined to afford preclusive effect to that ruling.

**D. The Record Before the Bankruptcy Court**

Lopez also argues that the bankruptcy court erred when it made its summary judgment determination based solely on the Final Amended Judgment and asserts that it should have instead required or reviewed additional supporting evidence - such as transcripts from the trial.[8] In considering a similar argument regarding declarations, the Supreme Court has previously stated that plaintiffs and defendants may move for summary judgment with **or without** supporting affidavits or similar materials. Celotex Corp., 477 U.S. at 323-24. "[T]he motion may, and should, be granted so long as whatever is before the [trial court] demonstrates that the standard for the entry of summary judgment, as set forth in" Federal Rule of Civil Procedure 56(c), is satisfied. Id.

Further, the bankruptcy court did in fact have evidence in addition to the Final Amended Judgment. The bankruptcy court's order specifically references the Superior Court's docket sheet, the jury's special verdict and factual findings, and the Superior Court's minute order denying Lopez's motion for a new trial and judgment notwithstanding the verdict. The record in this appeal also indicates that the bankruptcy court had before it the opinion from the California Court of Appeal, Fourth Appellate

[8] The specific request for trial transcripts appears unduly burdensome in light of the detailed rulings that were provided by the jury and the appellate court. The trial lasted more than a week and the resulting transcripts would likely number thousands of pages.

District, in which the Superior Court's judgment was upheld with the exception of the award of attorneys' fees. In the unlikely event that there was any doubt as to what the trial court had decided, the appellate decision discusses the events of the trial in great detail. For example, the appellate court remarks that the opening statements of the parties' counsel correctly indicated to the jury that this was a fraud case based on Lopez's misrepresentations in the May 2004 transmittal letter, and that the trial court instructed the jury on the law governing the causes of action for intentional and negligent misrepresentation.

It is true that the party seeking preclusion must introduce a sufficient record of the prior proceeding to allow the court to determine the exact issues previously litigated. Clark v. Bear Sterns & Co., Inc., 966 F.2d 1318, 1321 (9th Cir. 1992). The bankruptcy court in this case acknowledged that requirement and then concluded that it had a sufficient record of the fraud findings against Lopez because they were detailed and they specifically addressed each of the elements required to prove a fraud cause of action. Lopez claims that the Raicevics have failed to provide **any** evidence of his fraudulent intent, or that he knew Mr. Travis did not intend to pay the Raicevics, but the record of the Superior Court case and its appeal and the jury's findings on intentional misrepresentation provide precisely that – evidence of Lopez's fraud.

## VII. CONCLUSION

For all of the reasons set forth above, we AFFIRM the bankruptcy court's orders granting the Raicevics' motion for summary judgment, entering judgment of nondischargeability

23

against Lopez, and denying Lopez's motion for summary judgment.